IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTHER JANE MILLER, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | No. 19-2046 |
|     Defendant. | : | |

## MEMORANDUM OPINION

TIMOTHY R. RICE                                                      November 20, 2019
U.S. MAGISTRATE JUDGE

      Plaintiff Esther Jane Miller alleges the Administrative Law Judge ("ALJ") erred in denying her application for Disability Insurance Benefits ("DIB") by failing to credit her allegation that she needed to "move around" when she changed positions between sitting and standing. Pl. Br. (doc. 11) at 7. I disagree and deny Miller's claim.[1]

      Although Miller had multiple severe impairments, including cervical and lumbar herniation and radiculopathy, the ALJ found Miller capable of a limited scope of light work that included only positions with a sit/stand option. R. at 18. Based on testimony from a Vocational Expert ("VE") that such positions were available, the ALJ concluded Miller was not disabled. Id. at 25. The VE also testified that positions with a sit/stand option would require Miller to continue working while changing positions, and that no jobs were available where Miller could walk away from her work station for five minutes every time she changed position. Id. at 60.

---

[1]     Miller consented to my jurisdiction on June 5, 2019 (doc. 6), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018). See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

According to Miller, "the opinions of the treating providers" and "the objective diagnostic studies" supported "the fact that [she] would need to move around when she changed positions from sitting to standing." Pl. Br. at 7. The record does not support Miller's assertion.

As Miller conceded, the ALJ "did a relatively accurate review of the Claimant's treatment history." Id. at 5. Miller has cited no objective diagnostic studies which the ALJ failed to address, or whose findings his Residual Functional Capacity (RFC) fails to accommodate. The ALJ explained which limitations, including the limitation to light work and positions with a sit-stand option, were designed to accommodate Miller's neck, R. at 20, lower back, id. at 21, and knee, id. at 21-22, impairments.

There are three medical source opinions in Miller's record, two from consulting physicians and one from a treating provider. The ALJ gave "partial weight" to the opinion of the consulting examiner who saw Miller in 2015 and concluded she was far less limited than the ALJ found in his RFC. Id. at 23 ("claimant would be able to occasionally lift and carry 50 pounds and 25 pounds frequently . . . frequently use foot controls, and . . . occasionally climb ramps, stairs, ladders, ropes or scaffolds."). The ALJ gave "some weight" to the opinion of the physician who reviewed Miller's medical records in 2016 and found Miller could perform light work but imposed fewer limitations than the ALJ. Id. at 22 ("the claimant would be able to frequently climb ramps, stairs, and stoop").

Although a treating source's opinion is entitled to controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record, 20 C.F.R. § 404.1527(c)(2), the ALJ gave "little weight" to the 2018 opinion of Miller's treating physician, Dr. Amir Fayyazi. R. at 23. Dr. Fayyazi opined

that Miller's neck pain "will most likely result in a decreased level of function in the foreseeable future." Id. at 840. The ALJ reasoned that, despite Dr. Fayyazi's "lengthy treating relationship" with Miller, his narrative was vague and lacked specific work-related limitations. Id. at 23.

The ALJ provided substantial evidence to discount Dr. Fayyazi's opinion. Phillips v. Barnhart, 91 F. App'x 775, 780 (3d Cir. 2004) (affirming ALJ opinion that discounted treating physician opinion which, inter alia, failed to provide specific work-related limitations). Moreover, even providing additional weight to Dr. Fayyazi's opinion would not justify remand because it does not support Miller's contention that she would need to leave the work station of a job with a sit-stand option whenever she changes position. Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 767 (3d Cir. 2016) (affirming ALJ opinion despite harmless error).

Dr. Fayyazi's letter makes clear that he saw Miller to address only the complaints related to her neck. Id. at 839-40. He refused her request to fill out a standard functionality assessment because she did not seek an examination. Id. at 840. Instead, he recounted her treatment history, which consisted of two appointments. Id. The first appointment was in March 2017, when she told him she sought a second opinion on neurosurgery. Id. Dr. Fayyazi instead recommended physical therapy. Id. The final appointment was in October 2017, when Miller came in to discuss surgery and told Dr. Fayyazi physical therapy had "resulted in increasing discomfort," but left without scheduling surgery.[2] Id.

---

[2] The physical therapy records do not show that Miller was trying to avoid surgery but found the treatment "resulted in increasing discomfort." R. at 840. Instead, they show that Miller told the physical therapy providers she wanted surgery but was advised to try physical therapy first. Id. at 697. Moreover, she was making progress in May-June 2017, but declined to continue when more than 12 sessions were required. Id. at 700-731; see also id. at 732 (noting on June 7, 2017 that "[o]verall rehabilitation potential is good [because Miller] tolerated today's treatment/therapeutic activity with mild complaints of pain and difficulty"), and 736

3

Dr. Fayyazi's opinion that Miller's functioning is affected by her neck impairments is consistent with the ALJ's opinion, which specifically limits her RFC on this basis. Id. at 20. Nothing in his opinion supports Miller's contention that she would need to leave her work station for five minutes whenever changing positions at a job with a sit-stand option.

The RFC reflects the most that a claimant can still do despite her limitations. 20 C.F.R. § 1545(a)(1). As long as the ALJ supported his RFC with "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," his determination must be upheld. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). I cannot re-weigh the evidence and substitute my own findings for the ALJ's. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Miller has cited no objective evidence that the ALJ overlooked that would require her to walk around every time she changes position, and the opinion of her treating physician is consistent with the ALJ's RFC. The ALJ reasonably accommodated each of Miller's established limitations and the VE testimony provided substantial evidence that she would be able to find jobs available in the economy despite her impairments. Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999).

An appropriate Order accompanies this opinion.

---

(downgrading Miller's prognosis, on June 23, 2017, to "fair . . . due to failure to complete PT program").